IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL J. AGUILAR,

               Plaintiff,

   vs.                                      No. CIV 97-1481 JC/LFG

ARAMARK CORPORATION and ARAMARK
REFRESHMENT SERVICES, INC.,

               Defendants.

## MEMORANDUM AND ORDER
## ON PLAINTIFF'S MOTION TO COMPEL

THIS MATTER is before the Court on Plaintiff, Michael J. Aguilar's ("Aguilar"), June 18, 1998 Motion to Compel [Doc. 39]. In accord with the district's motion practice rule, the motion, response and reply were simultaneously filed. Oral argument is not necessary.

The Court reviews Aguilar's discovery request with the liberality contemplated by the federal rules. Discovery is designed to "[m]ake a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." United States v. Proctor & Gamble Co., 356 U.S. 677, 682, 78 S.Ct. 983, 986-87 (1958)(citing Hickman v. Taylor, 329 U.S. 495, 501, 67 S.Ct. 385, 388 (1947)). While the federal rules provide for broad and liberal discovery, the Court is mindful of the need to balance one party's right of discovery with the opposing party's right of privacy and right to be free from an intrusive and burdensome examination into private matters. Griswold v. State of Conn., 381 U.S. 479, 85 S. Ct. 1678 (1965). Thus, while the Court views with liberality the kind of discovery authorized under Fed. R. Civ. P. 26, it must also pay heed to the burdens imposed on a party required to answer discovery requests and consider the value of

the information that may be produced as compared to the burdensomeness, expense and difficulties imposed on the party required to produce the information.

It is with these principles in mind that the Court reviews Aguilar's motion.

## Request for Production Nos. 12 and 22

Aguilar seeks records of compensation, bonuses and commissions paid him and other individuals employed as coffee sales representatives in Aramark's western region since 1994. Defendant, Aramark Refreshment Services, Inc. ("ARS"), provided two exhibits, 5 and 22, which contain records of payments requested, including commissions and bonuses, and which contain information identifying the employee by name, social security number, gender, job code, job title, date of hire, and "annual equivalent salary." The column designating annual equivalent salary does not appear to differentiate between base salary, commissions and bonuses. ARS indicates that it is supplementing its response in its Answers to Second Set of Interrogatories and "intends to provide the requested clarification in its responses to these interrogatories." ARS states that there is no need for an order compelling responses. Because the Court's own examination of Exhibit 5 indicates that the answers requested by Aguilar are not readily decipherable from this exhibit, the Court does direct ARS to clarify its responses by providing records of compensation, bonuses and commissions paid Aguilar and other individuals employed as coffee sale reps in the western division since 1994.

## Interrogatories 5 and 6

In Interrogatory No. 5, Aguilar seeks to identify any and all employees of Aramark who have filed complaints, charges of employment discrimination, or lawsuits on the basis of race, sex, religion, national origin, or disability from 1990 to present. ARS responds by stating that there have been no charges of discrimination brought by Hispanics against Aramark based on decisions made by Julie

Voight, Scott Brandt or Dave Tarman.  Further, ARS contends that the information requested by Aguilar is not relevant under <u>Robbins v. Camden City Bd. of Educ.</u>, 105 F.R.D. 49 (D. N.J. 1985)(where plaintiff alleged race and age discrimination, there would be "no relevance and information that would support charges of discrimination based on sex, religion, national origin or any other basis").

The Court agrees with Defendant's objections.  The limited claims of discrimination based on ethnicity should not be sufficient to trigger wholesale discovery into claims of employment discrimination unrelated to ethnicity, or in areas beyond ARS's western region.  Thus, the Court will grant in part and overrule in part Aguilar's motion.

The Court directs ARS to identify any and all employees in ARS's western region who have made or filed complaints, charges of unlawful employment discrimination or lawsuits as a result of ethnic discrimination.  Further, because Aguilar claims that he was retaliated against because he filed charges, the Court will further require ARS to identify any and all employees of Aramark who have filed complaints, charges of unlawful employment discrimination or lawsuits specifically alleging retaliatory conduct for having opposed a practice made unlawful by Title VII.  The Court will not require information relating to other employment discrimination charges brought by charging parties which allege race, age, disability or gender.

In reference to Aguilar's Fair Labor Standards Act ("FLSA") claim, he contends that ARS wrongfully relies on an exemption relating to customer service and sales representatives.  Yet, Aguilar requests information concerning any claim of improper overtime exemption brought by any ARS employee.  The request is far too broad.  The Court will require, however, that ARS provide information concerning claims arising in ARS's western division concerning overtime compensation

claims relating to customer service and sales representatives or to ARS's assertion of an exemption for those claims.  ARS is not required to produce information concerning other claimed FLSA violations or exemptions that do not deal with customer service and sales representatives.

## Interrogatories 10 and 11; Request for Production No. 7

In these interrogatories, Aguilar seeks information concerning all Hispanics who have held managerial positions and Hispanics who have held positions as officers and directors at ARS.  In addition, Aguilar requests EEO1 reports describing the racial composition of Aramark's work force from 1991 through 1997.

In support of his motion, Aguilar only argues "this type of information is routinely requested in a discrimination suit."  Defendants, on the other hand, note that this lawsuit does not concern any claim that Aguilar sought or applied for a managerial position or a position as an officer or director of ARS.  Further, it is not a "pattern and practice" discrimination suit.  See, e.g., Coe v. Yellow Freight System, 646 F.2d 444 (10th Cir. 1981), nor is it founded on a disparate impact theory.  Id. In employment discrimination suits based either on pattern and practice or disparate impact, statistical evidence is generally employed to prove existence of disparate impact resulting from criticized employment criteria.  Statistical evidence is often sufficient to establish disparate impact which gives rise to a prima facie showing that particular practices operate to exclude members of protected groups.  Id.  To establish a prima facie showing of disparate impact, a Title VII plaintiff must show that he applied for an available position for which he was qualified and that he was rejected under circumstances giving rise to an inference of an unlawful discrimination in that his failure to be hired, transferred or promoted was more likely than not based on considerations of impermissible factors.  Statistical evidence is normally utilized to establish pattern and practice discrimination.  Here,

however, Aguilar contends that while employed with Aramark, he challenged Aramark's failure to pay him overtime benefits and questioned his supervisors when he learned that he was being paid less than other similarly situate employees.  He contends that he complained to the United States Department of Labor and filed a charge of discrimination with EEOC, and that after filing his claims, he received written warnings about his on-the-job performance and was told he could not apply for a promotion to a sales representative position.  Finally, he alleges that, in August 1995, he was terminated for improper use of company equipment and contends that the true reason was simply retaliation for having filed claims or complaints against ARS.

Nothing in Aguilar's complaint raises a claim for pattern and practice discrimination, nor is there any claim that Aguilar was qualified for, sought and was denied employment as a manager, officer or director.

In Gatewood v. Stone Container Corp., 170 F.R.D. 455 (S.D. Iowa 1996), the court noted, "When racial discrimination in management promotion decision is claimed, information, concerning racial composition of work force, qualified applicants for managerial positions, and employer's attitudes and efforts to hire and promote minorities generally, is admissible."  Here, however, there are no claims of that nature and the statistical evidence Aguilar seeks is not relevant to his claim.  Indeed, our own circuit holds that statistical evidence in employment discrimination cases should bear a direct relationship to the specific charge being tried.  Coe v. Yellow Freight Systems, 646 F.2d 444 at 452.  Here, the statistical information requested bears no direct relationship to Aguilar's claims.  The Court sustains ARS's objections to Interrogatories 10 and 11 and Request for Prod. No. 7.

### Request for Production Nos. 2 and 5

In these two requests, Aguilar seeks information on individuals who served in the position of

coffee sales representative for Aramark from 1991 to 1997.  He requests production of documents which show the experience level at the time they applied for or were given the position, how applicants expressed their interest in the position, why they were chosen for the position, their performance evaluations prior to being chosen, and any disciplinary memos or warnings given to those individuals prior to being chosen for the position.  Additionally, in Request No. 5, Aguilar requests documents reflecting the pay scale and actual wages paid to customer sales and service representatives and coffee sales representatives from 1991 through 1997, including commission and bonuses.

ARS objects to the first request, contending that production is burdensome and the burden and expense of producing the documents would likely outweigh any benefit under Rule 26.  ARS argues that given the way the files sought were collected and stored, responding to the request would require a search of sixty centers nationwide.

While the Court agrees that producing the documents would be burdensome, the information requested goes to the heart of Aguilar's claim.  He contends that he was told he could not apply for the position because he was on probation.  Thus, evidence of other applicants who applied for the same position who may have been on probation or may have had work performance evaluations comparable to Aguilar's would be relevant to his claims.  The Court agrees that the request for information nationwide is far too broad and will direct Defendants to provide the information, but limit the area of production to ARS's western division.  Accordingly, ARS shall provide the documents identified in Request for Production Nos. 2 and 5, but may limit the area of production to ARS's western division.

**Request for Production No. 24**

Aguilar seeks any and all documents reflecting the dollar value to the Plaintiff and/or the cost to Aramark of all work-related benefits, excluding salary, bonuses and commissions.  ARS responds that there are no documents responsive to this request.  While Aguilar expresses skepticism at this response, it is a verified response and the fact that there may not be documents that fit into the category requested does not mean that Defendants are refusing to produce documents.  The Court determines that the response is sufficient and that no further production is required.

**Interrogatory Nos. 2 and 3**

Aguilar requests that ARS describe fully and in detail any communications, correspondence, exchanges of information of which Aramark is aware concerning Aguilar's application for and request for appointment as a coffee representative.  Specific information concerning the communications is sought.  ARS responded that it was only aware of a conversation that Aguilar had with Julie Voight regarding his desire to be considered for a beverage sales position and has fully supplemented this answer with Exhibit 4 to ARS's response to the second EEOC charge.  Rather than responding to the interrogatory, however, ARS simply referred to prior discovery or to deposition testimony.  This is insufficient.  It does not matter that Aguilar made inquiries of deponents Scott Brandt and Julie Voight at their depositions concerning this general subject matter.  The question is a proper question and deserves a proper response.  The Court will direct that ARS respond to Interrogatories 2 and 3.

**Interrogatory No. 4**

Aguilar seeks information concerning "corporate knowledge" about claims challenging overtime exempt status relating to the CSSR position.  ARS agreed to amend its response, and, accordingly, no order to compel is required.

**Interrogatory No. 8 and Request for Production No. 1**

In Interrogatory No. 8, Aguilar requests all information relating to him which is kept by ARS. In its response, ARS indicates that it produced in its initial disclosures all information which is not privileged.  The Court determines that a further response is not necessary.  Accordingly, ARS need not respond further to Interrogatory No. 8 or Request for Production No. 1.

**Request for Production Nos. 25 and 26**

Aguilar seeks net worth and financial information regarding Defendant corporations.  Request No. 25 seeks current financial information reflecting assets, liabilities and net worth, and Request No. 26 seeks Aramark's annual reports from 1991 through present.  Aramark responded that it does not prepare separate annual reports.  Further, it objects to providing financial worth information unless and until Aguilar has made a prima facie showing of facts entitling him to an award of punitive damages.

There is no dispute that evidence of a party's net worth is relevant on the issue of punitive damages.  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S. Ct. 2748 (1981); Ramsey v. Culpepper, 738 F.2d 1092 (10th Cir. 1984).  Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 2811(C.D. Cal. 1998).  ARS objects to the production of information at this juncture, arguing that Aguilar is not entitled to the financial information until he has made a prima facie showing of ARS's liability for punitive damages.  Indeed, ARS's argument finds support in federal and state court rulings.  See, e.g., Chenoweth v. Schaaf, 98 F.R.D. 587 (W.D. Pa. 1983); John Does I-VI v. Yogi, 110 F.R.D. 629 (D.D.C. 1986); Rupe v. Fourman, 532 F. Supp. 344 (S.D. Ohio 1981).  Nonetheless, the majority of federal courts that have considered this question permit pretrial discovery of a defendant's financial condition without requiring establishment of a prima facie case.  Mid Continent

Cabinetry, Inc. v. George Koch Sons, Inc., 130 F.R.D. 149 (D. Kan. 1990)(11 cases collected in support of discovery).

To completely bar a party from discovering evidence which goes to a pending claim places that party in an untenable position.  In Wauchop v. Domino's Pizza, Inc., 138 F.R.D. 539, 550 (N.D. Ind. 1991), the court said:

> To require a prima facie showing of entitlement to punitive damages at this time, before the completion of discovery, could also be quite difficult for the plaintiff and would not be logical since the very purpose of discovery is to locate evidence to support a punitive damages claim.

This is not to say that a litigant may simply allege a garden-variety claim for punitive damages and have wholesale access to a defendant's financial information.  The Court may properly limit discovery to protect the defendant from unfair disclosure by limiting the use of information or requiring that the information be provided under seal or under strict conditions to govern its use.  The Court may also prevent a plaintiff from disseminating private information.

Here, Aguilar seeks financial information for a period spanning eight years.  This request is overly broad, burdensome and irrelevant to the issue of punitive damages.  Evidence of past net worth bears no relevancy to a party's ability to satisfy a punitive damage claim.  Indeed, only evidence of a defendant's present net worth is to be considered.  Woods-Drake v. Lundy, 667 F.2d 1198 (5th Cir. 1982).  A defendant's worth from years past simply bears no relevancy to the punitive damage issue.

In Cincinnati Ins. Co. v. Clark, 1992 WL 34128 (E.D. Pa. 1992)(No. Civ. A 91-0820), the court was faced with the similar issue.  The court stated that only evidence of present net worth was relevant.  The court required defendant to produce current financial information, but limited the request to a statement of defendant's present worth.  So, too, here.  The Court will grant, in part, the

9

motion to compel and will sustain, in part, ARS's objections.  The Court will require ARS to provide

a statement of its current net worth.  The Court will not require ARS to produce tax returns, balance

sheets, profit and loss statements, or to answer any questions concerning their prior financial

activities.  All that is required is evidence, by way of a sworn statement, or present balance sheet

showing present net worth.

Further, the Court will restrict use of this information.  It is to be used for purposes of this

litigation only, may not be disseminated outside of this litigation, and at the conclusion of the

litigation, the information provided is to be returned to ARS.  In sum, the Court will grant the motion

to compel requiring ARS to provide evidence of present net worth as indicated above; the Court

sustain all other of ARS's objections concerning answers to interrogatories and requests for

production relating to disclosure of financial information relating to taxes, net worth, etc.

### Interrogatory No. 17

Aguilar requests information as to whether any court has ever determined that Aramark is

liable as the employer of an individual Aramark contended was an employee of ARS or another

subsidiary.  Here, the Court denied the motion to dismiss and both Defendants are before the Court

to the extent published decisions are available on this issue, they are as readily available to Aguilar

as they are to Defendants.  Aguilar's employment status is dependent on factual considerations, and

if a court somewhere, sometime, in some unpublished opinion, made a pronouncement concerning

whether Aramark could be held liable as the employer of an individual Aramark contended was an

employee of ARS, it has little probative value in this case.  The Court is persuaded that the

burdensomeness on searching years of litigation records to obtain this information is minimally

relevant, and the minimal relevancy does not outweigh the time, expense and burden imposed on

Defendants.  The Court sustains Defendants' objection to Interrogatory No. 17.

### Request for Production No. 8 and 9

Aguilar seeks personal policy manuals and handbooks used by ARS, including both materials that may have been provided to him and those that he did not receive.  He further limited his request for manuals related to those issues which are the subject of his claims, including policy and procedures for equal employment opportunity, job performance, personnel practices, promotion, job evaluation, vehicle use and raises.  Defense counsel indicates that all applicable provisions of personnel policies and manuals were previously produced to Aguilar in Defendants' initial disclosures.  To the extent that there were any ARS written expressions of personnel policy that were not distributed to Aguilar, they would be made available at defense counsel's office in Albuquerque.  Finally, to the extent that Aguilar requests handbooks and manuals that have not been kept in the Albuquerque market center, it has offered to make those available to Aguilar in Philadelphia.  The request to travel to Philadelphia to view those policy manuals is unreasonable.  However, the Court cannot ascertain from the response whether the manuals or policies in question are of reasonable size and volume.  For example, if we are talking about a one or two volume compilation of documents, they should be shipped to defense counsel's office in Albuquerque, and, thereafter, Aguilar may inspect them to determine what portions, if any, he wishes to copy.  On the other hand, if we are talking about several lineal feet of material or multiple volumes of documents, then it would clearly be unreasonable to require Defendants to ship all documentation to Albuquerque.  The Court will withhold a final ruling on this request pending Defendants' clarification of what documents exist in Philadelphia and, more specifically, the volume of those documents, i.e., one 300-page book or two books of approximately 400 pages, or fifty volumes and/or binders of 700-1,000 pages.  That

11

information should be submitted in letter form to Court and opposing counsel within ten days.  Upon receipt of that information, the Court will issue a further order relating to the materials sought.

In Aguilar's reply to the motion to compel, Aguilar seeks to append his motion to compel "other miscellaneous items" which include various interrogatories and requests which were not part of Aguilar's motion to compel.  This procedure is inappropriate, denies Defendants an opportunity to respond, and is untimely.   The Court denies Aguilar's request to produce other related miscellaneous items.

All items which are ordered to be produced shall be produced within ten days.


_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge


ATTORNEY FOR PLAINTIFF:
Virginia Anderman, Esq.

ATTORNEYS FOR DEFENDANTS:
Scott D. Gordon, Esq.
Amy E. Badger, Esq.

_Lorenzo F. Garcia_

12